UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM TAYLOR SCOTT,

                                   Plaintiff,

        v.

CAROL W. COLVIN, Acting
Commissioner of Social Security,

                                   Defendant.

Civil No.    13-cv-1189-W (DHB)

**REPORT AND
RECOMMENDATION
REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

**[ECF Nos. 14, 15]**

## I. INTRODUCTION

On May 20, 2013, Plaintiff William Taylor Scott ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability benefits.  (ECF No. 1.)  On July 30, 2013, Defendant filed an answer (ECF No. 11) and the administrative record ("A.R.").  (ECF No. 12.)  On October 3, 2013, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial and an award of disability benefits or, alternatively, remand for further administrative proceedings.  (ECF No. 14.)  Plaintiff contends the Administrative Law Judge ("ALJ") committed reversible error by: (1) "fail[ing] to apply administrative *res judicata* and preclusive effects to [a] prior administrative finding that [he] is limited to light exertion, which would have resulted in a finding of disability;" and (2) ignoring the opinion of his treating physician.

(ECF No. 14-1 at 2:1-5.)[1]   On October 31, 2013, Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment.  (ECF Nos. 15, 16.)  On November 15, 2013, Plaintiff filed a reply to Defendant's opposition. (ECF No. 18.)  On November 22, 2013, Defendant filed a reply.  (ECF No. 19.)

For the reasons set forth herein, after careful consideration of the parties' arguments, the administrative record, and the applicable law, the Court hereby **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED** and that Defendant's cross-motion for summary judgment be **DENIED**, and that the case be **REMANDED** for further administrative proceedings.

## II.  PROCEDURAL BACKGROUND

**A.    Initial Application for Disability Benefits**

### 1.    Administrative Proceedings

On June 1, 2007, Plaintiff filed an application for social security disability alleging a disability beginning February 1, 2007.  (ECF No. 12 at 28.)   Following an administrative hearing on August 5, 2009 before ALJ Peter J. Valentino, ALJ Valentino denied Plaintiff's application on August 19, 2009 after finding that Plaintiff was not disabled, as defined by the Social Security Act.  (*Id.* at 25-25.)  In reaching this conclusion, ALJ Valentino determined that Plaintiff suffered from the severe impairments of bipolar disorder, alcohol abuse disorder, and skin cancer, but that his residual functional capacity ("RFC") permitted him to perform light work except that he must avoid working outdoors, and he is limited to simple and repetitive tasks with no public contact.  (*Id.* at 30-31.)  At the time of this decision, Plaintiff had attained the age of 52, having been born on May 23, 1957; thus, he was deemed to be "closely approaching advanced age."  (*Id.* at 33; *see also* 20 C.F.R. § 416.963(d).)  The Commissioner's

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing ("ECF") system.  Although the Court typically cites directly to the administrative record in Social Security cases, because the stamped page numbers on the administrative record in this case are often missing or incomplete, the Court will also reference the ECF page numbers when citing to the administrative record.

1  decision became final on March 25, 2010 when the Appeals Council denied Plaintiff's

2  request for review of the ALJ Valentino's decision.  (ECF No. 12 at 40-42.)

3      **2.    Judicial Proceedings**[2]

4      On May 28, 2010, Plaintiff sought judicial review of the Commissioner's final

5  decision.  On April 13, 2012, Magistrate Judge Peter C. Lewis issued a Report and

6  Recommendation that Plaintiff's motion for summary judgment be denied and that the

7  Commissioner's cross-motion for summary judgment be granted.  On June 5, 2012, the

8  Honorable Roger T. Benitez adopted the Report and Recommendation, denied Plaintiff's

9  motion for summary judgment, and granted the Commissioner's cross-motion for

10  summary judgment.

11 **B.    Second Application for Disability Benefits**

12      On May 3, 2010, while concurrently seeking judicial review of the Commissioner's

13  final decision, Plaintiff also filed a second application for social security disability

14  benefits pursuant to Title II of the Social Security Act.  (ECF No. 12 at 15.)  Plaintiff

15  again alleged a disability beginning on February 1, 2007.  (*Id.*)  After an August 12, 2010

16  denial at the initial determination (*id.* at 45-49) and a December 10, 2010 denial on

17  reconsideration (*id.* at 51-55), Plaintiff filed a timely request for hearing before an ALJ.

18  (*Id.* at 56.)  On July 10, 2012, Plaintiff testified at an administrative hearing before ALJ

19  Howard K. Treblin.  (ECF No. 12-3 at 62-80.)  Plaintiff was represented at the hearing

20  by an attorney, David Shore.  (*Id.* at 62, 64.)  Following the hearing, Plaintiff submitted

21  a post-hearing brief to ALJ Treblin.  (ECF No. 12 at 99; ECF No. 12-1 at 1-3.)  On

22  August 30, 2012, ALJ Treblin denied Plaintiff benefits after finding that Plaintiff was not

23  disabled, as defined by the Social Security Act.  (ECF No. 12 at 12-24.)   The

24  Commissioner's decision became final on March 5, 2013 when the Appeals Council

25  denied Plaintiff's request for review of ALJ Treblin's decision. (*Id.* at 8-10.) Thereafter,

26  Plaintiff filed the instant action on May 20, 2013.  (ECF No. 1.)

27  ───────────────

28      [2] The Court takes judicial notice of the pleadings and court orders from the prior judicial review of the Commissioner's denial of Plaintiff's disability application in *Scott v. Astrue*, 10-cv-1167-BEN (PCL).

### III.  LEGAL STANDARDS

#### A.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed or any other substantial gainful employment which exists in the national economy.   42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as "disabled." *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

/ / /

1  Although the ALJ must assist the claimant in developing a record, the claimant
2  bears the burden of proof during the first four steps, while the Commissioner bears the
3  burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098 & n.3 (citing 20 C.F.R. §
4  404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform
5  some other work that exists in 'significant numbers' in the national economy, taking into
6  consideration the claimant's residual functional capacity, age, education, and work
7  experience." *Id.* at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

8  **B.    Scope of Review**

9  The Social Security Act allows unsuccessful claimants to seek judicial review of
10 the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3).  The scope
11 of judicial review is limited.  The Court must affirm the Commissioner's decision unless
12 it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v.*
13 *Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human*
14 *Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211,
15 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if
16 it is based upon legal error or is not supported by substantial evidence." (citing *Tidwell*,
17 161 F.3d at 601)).

18 "Substantial evidence is more than a mere scintilla but less than a preponderance."
19 *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir.
20 1997)).  "Substantial evidence is relevant evidence which, considering the record as a
21 whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*,
22 44 F.3d at 1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)).  In
23 considering the record as a whole, the Court must weigh both the evidence that supports
24 and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.
25 1985) (citing *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger*, 522
26 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the denial of benefits if the
27 evidence is susceptible to more than one rational interpretation, one of which supports
28 the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where

1  evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion

2  that must be upheld." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.

3  1995))); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming

4  or reversing the Secretary's conclusion, the court may not substitute its judgment for that

5  of the Secretary." (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Matney v.*

6  *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  However, even if the Court finds that

7  substantial evidence supports the ALJ's conclusions, the Court must set aside the decision

8  if the ALJ failed to apply the proper legal standards in weighing the evidence and

9  reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting

10  *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

11  Section 405(g) permits the Court to enter a judgment affirming, modifying or

12  reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The matter may also be

13  remanded to the Social Security Administration for further proceedings.  *Id.*

## IV.  FACTUAL BACKGROUND

15  Plaintiff alleges he became disabled on February 1, 2007.  (ECF No. 12-1 at 4.)

16  Prior to his alleged disability, Plaintiff was employed as a pool technician, production

17  line worker, and warehouse worker.  (*Id.* at 28.)

18  **A.**    **Medical Evidence**

19      **1.**    **Treating Physician Evidence**

20          a.    Tri-City Medical Center

21  On July 5, 2007, Plaintiff was transported by police officers to the Tri-City

22  Medical Center in Oceanside, California, due to intoxication and suicidal thoughts due

23  to his unemployment and a recent breakup with his girlfriend.  (*Id.* at 87.)  Plaintiff was

24  noted to have a history of bipolar disorder and skin cancer.  (*Id.*)

25          b.    Neighborhood HealthCare

26  Plaintiff was treated at Neighborhood HealthCare in Escondido, California, from

27  September 22, 2009 to June 18, 2012, during which time he was seen by numerous

28  physicians, including Dr. Gabriel Rodarte, Dr. Margaret Chen, and Dr. Kekoa Ede.  (*Id.*

at 97-100; ECF No. 12-2 at 1-8; ECF No. 12-3 at 10-11, 16-59.)  Plaintiff was treated during this time for a variety of medical issues, including depression, chronic obstructive pulmonary disease ("COPD"), bronchitis, anxiety, headaches, cold symptoms, anemia, and back pain.  (*Id.*)

On October 14, 2010, Dr. Rodarte diagnosed Plaintiff with depression, psychosis, and alcohol dependence, and he noted that Plaintiff "may have a schizophrenia spectrum illness" based on his medical history.  (ECF No. 12-2 at 10.)  Dr. Rodarte did not believe Plaintiff had bipolar disorder.  (*Id.*)  Dr. Rodarte prescribed medication for Plaintiff's depression and anxiety.  (*Id.*)

On October 10, 2011, Dr. Ede treated Plaintiff for back pain, nerve pain in his right leg, and an aching pain in his toes and fingers.  (ECF No. 12-3 at 43-44.)

On November 7, 2011, Dr. Chen treated Plaintiff for chronic back pain and major depressive disorder.  (*Id.* at 33-34.)

On March 5, 2012, Plaintiff saw Dr. Chen due to a recent "3 day hard alcohol binge," at which time Plaintiff reported anxiety and requested a psychiatric referral.  (*Id.* at 24.)  Dr. Chen assessed and treated Plaintiff for major depressive disorder and panic disorder with agoraphobia.  (*Id.* at 25.)  She also assessed Plaintiff with COPD.  (*Id.*)

On June 18, 2012, Dr. Chen treated Plaintiff for alcohol dependency and major depressive disorder.  (*Id.* at 17-19.)

The administrative record also contains an undated verification of disability form completed by Dr. Chen and submitted to the Palomar College Disability Resource Center.  (*Id.* at 8.)  In the form, Dr. Chen states that Plaintiff suffers from chronic low back pain and chronic knee pain, and that he "can't walk long distances."  (*Id.*)[3]

///

///

---

[3] The administrative record contains a second undated verification of disability form submitted to the Palomar College Disability Resource Center, although the name of the submitting physician is not readily apparent to the Court.  (ECF No. 12-3 at 7.) The form states that Plaintiff is "hypomanic" and that he "requires repetition of information to register properly."  (*Id.*)

### c.   Valley Radiology

On October 9, 2009, Plaintiff was seen at Valley Radiology in Escondido, California, where he received x-rays of his left and right knees, lumbar spine, and sacrum and coccyx due to pain in his knees, lower back, and tail bone.  (ECF No. 12-2 at 14-17.) The x-rays were unremarkable with the sole exception that his lower back x-ray showed minimal scoliosis.  (*Id.*)

### d.   San Diego County Psychiatric Hospital

On July 14, 2010, Dr. Thomas Meeks of the San Diego County Psychiatric Hospital completed a two-page Brief Psychiatric Assessment.  (*Id.* at 20-21.)  The assessment indicated Plaintiff complained of increased depression, hearing voices, seeing shadows, and insomnia.  (*Id.* at 20.)  Dr. Meeks noted that Plaintiff exhibited symptoms of depression, sleep disturbance and insomnia, mood swings, hallucinations, and confusion.  (*Id.*)  Plaintiff denied being dangerous to himself or others.  (*Id.*)  Dr. Meeks diagnosed Plaintiff with mood disorder, psychosis not otherwise specified, and alcohol related disorder.  (*Id.* at 21.)  Dr. Meeks referred Plaintiff to a substance abuse treatment program and prescribed him Risperidone and Fluoxetine (Prozac).  (*Id.*)

### e.   County of San Diego Mental Health Services

Plaintiff was treated by the staff at the County of San Diego Mental Health Services on July 16, 2010.  (*Id.* at 25-42.)  Plaintiff stated he had struggled with "manic-depression" for eighteen to twenty years, and he had been taking Wellbutrin and Prozac in the past but had not been using any mood stabilizing medication "for a long time."  (*Id.* at 25.)

### f.   Palomar Medical Center

On September 15, 2010, Plaintiff visited the emergency room at Palomar Medical Center complaining of chest pain and shortness of breath.  (ECF No. 12-3 at 1-5.) Plaintiff reported a history of anxiety, depression, and alcoholism.  (*Id.* at 1.)  He typically medicates with Xanax or Klonopin, but when he runs out of medicine he drinks alcohol.  (*Id.*)  The emergency room physician concluded Plaintiff was not experiencing

any serious medical conditions such as cardiac or pulmonary disease, but that his symptoms were consistent with an underlying anxiety disorder. (*Id.* at 4.)

### 2. Consulting Physician Evidence

#### a. Dr. Romualdo Rodriguez

On July 28, 2010, Dr. Romualdo Rodriguez of the QTC Medical Group in Vista, California, performed a Complete Psychiatric Evaluation of Plaintiff. (ECF No. 12-2 at 53-59.) Plaintiff reported suffering from undiagnosed attention deficit hyperactivity disorder ("ADHD") with symptoms including difficulty concentrating or being organized, losing things easily, leaving tasks unfinished, and having to read material numerous times with problems in comprehension. (*Id.* at 54.) As a result of these symptoms, Plaintiff becomes frustrated, angry, and depressed. (*Id.*) Additional causes of his depression are feelings of sadness and withdrawals, irritability, sleep and appetite disturbances, and feelings of helplessness and uselessness, although he denied feeling suicidal. (*Id.*) Plaintiff reported he uses Trazodone, Prozac, Risperdal, and Abilify to treat mood swings, anger, and depression, and that the medications are helpful. (*Id.*)

Dr. Rodriguez diagnosed Plaintiff with alcohol dependence, mood disorder not otherwise specified, and ADHD. (*Id.* at 58.) Dr. Rodriguez concluded: "From a psychiatric point of view, as long as [Plaintiff] is properly treated for ADHD and bipolar disorder and he abstains from alcohol, he could easily recover from his symptoms within twelve months." (*Id.*) As to Plaintiff's functional limitations, Dr. Rodriguez found that, based on his consulting examination, Plaintiff is able to understand, remember, and carry out simple one or two-step job instructions; unable to follow detailed and complex instructions; slightly limited in his ability to relate and interact with supervisors, co-workers, and the public; moderately limited in his ability to maintain concentration, attention, persistence, and pace; slightly limited in his ability to associate with day-to-day work activity, including attendance and safety; slightly limited in his ability to adapt to stresses common to a normal work environment; slightly limited in his ability to maintain regular attendance in the work place and perform work activities on a consistent basis;

and slightly limited in his ability to perform work activities without special or additional supervision.  (*Id.* at 59.)

                b.    Dr. Thomas Sabourin

On August 3, 2010, an orthopedic surgeon, Dr. Thomas Sabourin of the QTC Medical Group, performed an Orthopedic Consultation on Plaintiff.  (*Id.* at 80-84.) Plaintiff reported low back pain at the time of the consultation, as well as a history of back pain (upper and lower) radiating into his right leg.  (*Id.* at 80.)  Plaintiff "characterize[d] his pain as a sharp, throbbing, excruciating pain with sitting, standing, walking, bending, or lifting."  (*Id.*)

Dr. Sabourin diagnosed Plaintiff with "chronic lumbar strain and sprain syndrome."  (*Id.* at 83.)  Based on his examination of Plaintiff, Dr. Sabourin opined that Plaintiff "could lift or carry 50 pounds occasionally and 25 pounds frequently.  He could stand and walk six hours of an eight-hour workday and sit for six hours of an eight-hour workday.  Push and pull limitations are equal to lift and carry limitations.  He could climb, stoop, kneel, and crouch frequently.  He has no manipulative limitations.  He has no need for assistive devices."  (*Id.*)

**3.     Examining Physician Evidence**

                a.    Dr. B. Smith

On July 29, 2010, a state agency medical consultant, Dr. B. Smith, completed a Mental Residual Functional Capacity Assessment.  (*Id.* at 61-63.)  Dr. Smith opined Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.* at 61-62.)  On all other aspects of the assessment Plaintiff was noted as being not significantly limited.  (*Id.*)

Dr. Smith also completed a Psychiatric Review Technique form on July 29, 2010. (*Id.* at 64-74.)  The form noted Plaintiff as having a psychotic disorder not otherwise

specified and bipolar disorder. (*Id.* at 66-67.)  The form also stated that Plaintiff had mild limitations with respect to activities of daily living and maintaining concentration, persistence, and pace, and that he had moderate limitations in maintaining social functioning. (*Id.* at 72.)  Finally, the form found Plaintiff had experienced one or two episodes of decompensation, each of extended duration. (*Id.*)

### 4.   Function Reports

#### a.   Plaintiff's Function Report

On July 13, 2010, Plaintiff completed a Function Report indicating that he is homeless; he spends his days walking around looking for work, going to church, or to a college campus to gain computer access; and that the medication he is taking does not help him the way he would like. (ECF No. 12-1 at 35-36.)

#### b.   Third Party Function Report

On August 21, 2010, Plaintiff's sister, Jerri Scott, completed a Third Party Function Report. (*Id.* at 37-46.)

### 5.   Work History Report

On July 13, 2010, Plaintiff completed a Work History Report detailing his prior work history as a pool technician (from 1983 to 2006), production line worker at a food processing plant (2002 to 2004), and a warehouse worker at Fry's Electronics (undated). (*Id.* at 28-34.)

As a pool technician he was responsible for cleaning pools and pool filters, and caulking. (*Id.* at 29.)  He estimated he was required to stoop for six hours per day; handle, grab, or grasp big objects for four hours per day; walk, stand, and kneel for two hours per day; and climb, crouch, and crawl for one hour per day. (*Id.*.)  The job did not require sitting, reaching, writing, typing, or handling small objects. (*Id.*)  The heaviest weight he lifted was fifty pounds, and he frequently (from one-third to two-thirds of the workday) lifted less than ten pounds. (*Id.*)

As a production line worker he was responsible for placing labels on food containers and plastic rings for shrink wrapping the containers, and packing items into

boxes for shipping.  (*Id.* at 30.)  He estimated he was required to stand for four hours per day; sit for three hours per day; walk for one hour per day; and climb, stoop, kneel, reach, and handle, grab, or grasp big objects for a half hour per day.  (*Id.*)  The job did not require crouching, crawling, writing, typing, or handling small objects.  (*Id.*)  The heaviest weight he lifted was between twenty and fifty pounds, and he frequently lifted ten pound objects.  (*Id.*)

As a warehouse worker he was responsible for placing prices on boxes or store items.  (*Id.* at 31.)  He estimated he was required to kneel for three hours per day; stand for two to three hours per day; and walk, sit, and crouch for one hour per day.  (*Id.*)  The job did not require climbing, stooping, crawling, handling, grabbing, or grasping big objects, reaching, or writing, typing, or handling small objects.  (*Id.*)  The heaviest weight he lifted was twenty pounds.  (*Id.*)

**B.**  **The Hearing**

**1.**  **Plaintiff's Testimony**

Plaintiff testified at the hearing before ALJ Treblin on July 10, 2012, at which time he was 55 years old.  (ECF No. 12-3 at 65-66.)  Plaintiff is a high school graduate, and he currently attends Palomar College taking algebra and English composition.  (*Id.* at 66.)  In the past he has maintained a 3.0 grade point average.  (*Id.*)  Palomar College provides him assistance through its Disability Resource Center such as extra time to take exams and providing on-campus transportation.  (*Id.* at 70-71.)

Plaintiff testified he suffers from insomnia, depression, bipolar disorder, major back pain, arthritis in his hands, ADHD, difficulty concentrating and remembering, difficulty getting along with other people, and mood swings.  (*Id.* at 66-67, 69, 71.)

Plaintiff smokes five to ten cigarettes per day, and he is a recovering alcoholic who is not currently drinking.  (*Id.* at 67.)

Plaintiff takes tramadol for back pain; Wellbutrin for depression and bipolar disorder; trazodone to help him sleep; and Zoloft for sleeping, depression, and bipolar disorder.  (*Id.* at 67-68.)

Plaintiff testified he can lift a gallon of milk but that it hurts, he can reach "a little bit" over his head, he is able to sit comfortably for only five to ten minutes, he is able to stand or walk for five to ten minutes at a time, and he has trouble bending down and getting back up. (*Id.* at 68-69.)

## 2.    Vocational Expert's Testimony

Vocational expert Nelly Katsell testified at Plaintiff's hearing before ALJ Treblin. (*Id.* at 73-79.) Ms. Katsell testified that Plaintiff's prior work experience is described in the *Dictionary of Occupational Titles* as (1) a "swimming pool servicer," which involved medium exertion and a specific vocational preparation ("SVP") time of 4; (2) "general production worker," which involved medium exertion and an SVP time of 2; (3) "home attendant," which involved medium exertion and an SVP time of 3; (4) "checker, warehouse," which involved sedentary exertion and an SVP time of 4; and (5) "bindery worker," which involved light exertion and an SVP time of 4. (*Id.* at 73.)

ALJ Treblin asked Ms. Katsell to consider a hypothetical claimant with the same age, education, and past work as Plaintiff who is limited to performing medium work consisting of no more than simple work involving one to two steps in a non-public setting. (*Id.*) Ms. Katsell testified that Plaintiff could perform his past work as a "general production worker." (*Id.* at 73-74.) She also testified a significant number of jobs existed in the national economy that the hypothetical person could perform, including packager and garment maker. (*Id.* at 74.)

ALJ Treblin next asked Ms. Katsell to consider another hypothetical claimant who differed from the first in that the hypothetical included the following additional limitations: lifting and/or carrying eighty pounds occasionally; overhead activity occasionally; use of hands for gross and fine manipulation occasionally; sitting, standing, and walking five to ten minutes at a time; occasional postural activity; and inability to understand, remember, or carry out even simple tasks. (*Id.*) Ms. Katsell testified that such a hypothetical claimant would be unable to perform Plaintiff's past work or other work. (*Id.*)

**C.      The ALJ's Findings**

     **1.      Step One**

After consideration of all the evidence, ALJ Treblin concluded Plaintiff has not been under a disability, as defined by the Social Security Act, from May 3, 2010, the date Plaintiff's application was filed. (ECF No. 12 at 16, 24.) Specifically, at step one of the sequential evaluation process, ALJ Treblin concluded Plaintiff has not engaged in substantial gainful activity since May 3, 2010. (*Id.* at 17.)

     **2.      Step Two**

At step two, ALJ Treblin concluded Plaintiff has the following severe impairments: back pain, major depression, panic disorder, and chronic obstructive airway disease. (*Id.* at 17-18.)

     **3.      Step Three**

At step three, ALJ Treblin concluded Plaintiff does not have an impairment or combination of impairments that meet or exceed the impairments contained in the Listing of Impairments. (*Id.* at 18.) In assessing whether Plaintiff satisfies the "paragraph B" criteria with respect to the severity of his mental impairments, ALJ Treblin concluded Plaintiff's mental impairments did not result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.* at 18-19.) ALJ Treblin found Plaintiff had only mild restrictions in activities of daily living; moderate restrictions in social functioning and maintaining concentration, persistence, or pace; and Plaintiff had experienced no episodes of decompensation of extended duration. (*Id.* at 18.) ALJ Treblin also concluded that no evidence establishes the presence of the "paragraph C" criteria. (*Id.* at 19.)

     **4.      Residual Functional Capacity**

Prior to considering step four, ALJ Treblin determined Plaintiff has the RFC to perform medium work and that he can perform simple, one to two-step tasks in a non-

public work environment. (*Id.*) In making this assessment, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms (including bipolar disorder, back pain, arthritis, ADHD, trouble concentrating, mood swings, and paranoia), but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully creditable to the extent they are inconsistent with the RFC determination. (*Id.* at 19-20.)

ALJ Treblin found the record devoid of evidence that Plaintiff was hospitalized for his impairments or that Plaintiff "received significant active care other than for conservative routine maintenance." (*Id.* at 20.) Additionally, the record did not demonstrate significant increase or changes in prescribed medication reflective of an uncontrolled condition, and Plaintiff did not describe side effects of his medication that would prevent him from participating in substantial gainful activity. (*Id.*) Furthermore, no treating or examining source opined that Plaintiff was completely debilitated or unemployable. (*Id.*)

ALJ Treblin also noted Plaintiff's ability to attend Palomar College and maintain a 3.0 grade point average, which is physically and mentally challenging, requires the same attributes required for full time employment, and the education record contradicts Plaintiff's claims of poor concentration and memory. (*Id.*)

In addition, Plaintiff's alleged inability to work is inconsistent with his continual efforts to look for work. (*Id.*) Further, the medical findings on examination generally showed normal and subjective in nature, and did not reflect disabling symptoms. (*Id.* at 20-21.) Moreover, the clinical findings concerning Plaintiff's back pain were "quite minimal and not at a level considered disabling," and the record does not indicate that Plaintiff's diagnosis of COPD results in any functional limitations. (*Id.* at 21.)

ALJ Treblin also found Plaintiff lacked credibility regarding his testimony of alcohol use, because although he testified he no longer drinks, the record shows he went on a three-day drinking binge in March 2012, and was drinking as of June 2012 at which time he was diagnosed with alcohol dependency. (*Id.*)

Regarding Plaintiff's mental impairments, ALJ Treblin found his mental exams to be generally unremarkable; his thought process was coherent and within normal limits; his global assessment of functioning ("GAF") score of 47 indicated moderate to severe symptoms, although the GAF score subsequently improved to 49; his mental status improved over time; he was alert and his speech was normal; he was cooperative and appropriate; his mood was euthymic; his memory, judgment, and insight were normal; and he did not experience hallucinations. (*Id.*)  Although Plaintiff stated he had trouble being around other people, the record contained multiple evidences that contradicted this testimony. (*Id.*)

Plaintiff's medication use does not suggest impairments beyond those determined by ALJ Treblin, and his medication history is inconsistent with Plaintiff's claims of severe pain. (*Id.*)  Further, the record does not support a diagnosis of ADHD.

With respect to opinion evidence, ALJ Treblin gave moderate weight to Dr. Ramirez's July 2010 consultative opinion, although the ALJ did not agree with Dr. Ramirez's conclusion that Plaintiff is only slightly limited in his ability to relate to and interact with the public.  Rather, the ALJ found Plaintiff to have moderate limitations in this area. (*Id.* at 22.) ALJ Treblin gave significant weight to Dr. Sabourin's August 2010 consultative opinion finding it to be well-supported by the medical evidence and not inconsistent with other substantial evidence. (*Id.*)  Finally, the ALJ gave Dr. Smith's July 2010 examining opinion moderate weight except he did not credit Dr. Smith's opinion as to Plaintiff's difficulties in concentration or his finding of one or two episodes of decompensation, each of extended duration. (*Id.*)

The ALJ afforded little weight to Plaintiff's sister's third party function report because it was internally inconsistent, based on speculation, the sister is not medically trained, and her assessment is inconsistent with Plaintiff's treating records. (*Id.* at 22-23.)

**5.    Step Four**

At step four of the sequential evaluation process, ALJ Treblin credited the vocational expert's testimony that Plaintiff would be able to perform his past relevant

work as a general production worker in light of the determined RFC.  (*Id.* at 23.)

### 6.    Step Five

In addition, ALJ Treblin made alternative findings at step five of the analysis. Specifically, ALJ Treblin concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (*Id.* at 23-24.)  Specifically, ALJ Treblin found Plaintiff is capable of performing the work of a hand packager and garment maker.  (*Id.* at 24.)

Therefore, ALJ Treblin concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.*)

### V.  DISCUSSION

In his motion for summary judgment, Plaintiff contends ALJ Treblin committed two reversible errors: (1) "fail[ing] to apply administrative *res judicata* and preclusive effects to the prior administrative finding that [he] is limited to light exertion, which would have resulted in a finding of disability;" and (2) ignoring the opinion of his treating physician.  (ECF No. 14-1 at 2:1-5.)  The Court addresses each argument in turn.

### A.    *Res Judicata* **Effect of Prior ALJ's Finding**

### 1.    Parties' Arguments

Plaintiff first argues that ALJ Treblin erred by failing to "apply administrative *res judicata* and preclusive effects to the prior administrative finding that [Plaintiff] is limited to light exertion, which would have resulted in a finding of disability."  (*Id.* at 2:1-3.) Plaintiff contends the ALJ should have given some *res judicata* consideration to ALJ Valentino's prior RFC determination that Plaintiff was limited to light work, but that ALJ Treblin instead found Plaintiff capable of performing medium work.  According to Plaintiff, the distinction is outcome-determinative as to whether he should be found to be disabled because by the time of ALJ Treblin's decision, Plaintiff had attained the age of 55, which placed him in a new category with respect to the Grids, *i.e.*, an advanced aged individual.  Plaintiff contends he now meets the disability requirement of Grid Rule

202.06 in that he is of advanced aged, he is limited to light work, he has at least a high school education, he is unable to perform his past relevant work as a pool technician and production line worker, and he cannot use transferable skills to perform other semiskilled or skilled work. (*Id.* at 4:15-5:2.) Plaintiff concedes ALJ Treblin was not bound by the findings made by ALJ Valentino, but Plaintiff argues ALJ Treblin was required, but failed, to at least give some *res judicata* consideration to ALJ Valentino's finding that Plaintiff is only capable of light work. (*Id.* at 5:3-9.)

Defendant contends Plaintiff failed to satisfy his burden "to show that administrative res judicata precluded the ALJ [Treblin] from evaluating new medical evidence about Plaintiff's residual functional capacity." (ECF No. 15-1 at 3:13-15.) Moreover, the Commissioner contends ALJ Treblin properly considered new medical evidence from the period of time after the prior non-disability determination in August 2009, specifically, that ALJ Treblin "considered generally normal findings on examination, Plaintiff's analgesic medication history, and the opinion of consultative examiner and orthopedic surgeon Thomas Sabourin, M.D." (*Id.* at 3:18-20.) The Commissioner contends Dr. Sabourin's evaluation constitutes new and material information not presented to ALJ Valentino, thus permitting ALJ Treblin's reconsideration of the prior RFC finding even in the absence of evidence of medical improvement. (*Id.* at 3:22-28.)

Plaintiff rejects the Commissioner's argument that the record contains new and material evidence supporting a finding that Plaintiff could perform medium exertion. Plaintiff contends the Commissioner's position that ALJ Treblin considered new and material information in the form of the consultative examiner's opinion that Plaintiff could perform medium exertion is flawed because it "presuppose[s] that the ALJ actually undertook that analysis, which the ALJ did not." (ECF No. 14-1 at 5:13-14 (citing *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.")).) Rather than review the prior findings and evidence to determine the impact

of any new and material evidence on Plaintiff's RFC assessment, Plaintiff contends ALJ Treblin "simply reviewed this case *de novo*." (*Id.* at 5:21-22.)  In any event, Plaintiff contends the opinion evidence is insufficient to overcome the preclusive impact of ALJ Valentino's RFC finding because "the opinion evidence is merely a different perspective on the same evidence." (*Id.* at 5:23-24.)

### 2.    Legal Standards

The Social Security Act provides that "[t]he findings and decisions of the Commissioner . . . after a hearing shall be binding upon all individuals who were parties to such hearing."  42 U.S.C. § 405(h).  The Ninth Circuit recognizes that a "first administrative law judge's findings concerning [a] claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988) (citing *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)); *see also United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." (citations omitted)).

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez*, 844 F.2d at 693 (citing *Lyle*, 700 F.2d at 568 n.2).  "In the social security context, a previous finding that a claimant is not disabled creates a presumption of continuing nondisability." *Sam v. Astrue*, No. 1:09cv0971 DLB, 2010 U.S. Dist. LEXIS 131307, at *19-20 (E.D. Cal. Nov. 29, 2010) (citing *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985)).  "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). "Because a change in age status often will be outcome-determinative under the bright-line

distinctions drawn by the Medical-Vocational grids, [the Ninth Circuit has found] that the attainment of 'advanced age' constitutes a changed circumstance precluding the application of res judicata to the first administrative law judge's ultimate finding against disability." *Id.* (citing *Kane v. Heckler*, 776 F.2d 1130, 1132 (3rd Cir. 1985); *Cabral v. Heckler*, 604 F. Supp. 831, 833 (N.D. Cal. 1984)).

### 3.   Analysis

As an initial matter, ALJ Treblin's conclusion that he did not have jurisdiction over the prior administrative proceedings because Plaintiff's appeal of the Commissioner's prior denial of benefits was pending before the district court at the time of ALJ Treblin's decision is factually unsupported.  (ECF No. 12 at 15.)  The prior judicial proceedings terminated on June 5, 2012, when the district court denied Plaintiff's motion for summary judgment and granted the Commissioner's cross-motion for summary judgment.  This occurred before both the July 10, 2012 administrative hearing before ALJ Treblin and his August 30, 2012 denial of disability benefits.  Moreover, prior to ALJ Treblin's August 30, 2012 decision, Plaintiff's counsel advised ALJ Treblin that the judicial proceedings had ended.  (ECF No. 12-3 at 61.)

Next, Plaintiff has adequately overcome the presumption of continuing non-disability by demonstrating "changed circumstances," *i.e.*, his change in age status from "closely approaching advanced age" to "advanced aged."  *See Chavez*, 844 F.2d at 694 ("The claimant's attainment of 'advanced age' status became legally relevant and should have been considered.").  Accordingly, ALJ Valentino's findings, including his finding that Plaintiff was limited to light work, were "entitled to some res judicata consideration in subsequent proceedings."  *Id.* at 694.

Plaintiff contends "*Chavez* is virtually on point to this case." (ECF No. 18 at 4:13.)  However, in *Chavez*, there was no indication in the record that the purportedly "new and material evidence" presented to the second judge "had not been presented to the first administrative law judge.  In the absence of such a record, the second administrative law judge could not reopen the prior determinations concerning the claimant's ability to

1  perform his past relevant work." 844 F.2d at 694. The Ninth Circuit then concluded:

> Principles of res judicata made binding the first judge's determination that the claimant had a residual functional capacity of light work, was of limited education, and was skilled or semi-skilled. The claimant's attainment of 'advanced age' status became legally relevant and should have been considered. Because the second judge failed to afford preclusive effect to the first judge's determinations or to apply the legal standards applicable to individuals possessing the claimant's characteristics, his decision was not supported by substantial evidence.

*Id.* at 694.

Here, in contrast to *Chavez*, it is apparent that the "new and material evidence" presented to ALJ Treblin truly was "new." Indeed, ALJ Treblin expressly stated that in determining whether Plaintiff was disabled, he was only considering evidence going back to August 20, 2009, the day after ALJ Valentino's prior decision. (ECF No. 12 at 15.) Moreover, ALJ Treblin's summary of Plaintiff's medical records clearly demonstrates that all the evidence actually considered was from the period of time after ALJ Valentino's earlier decision. (*Id.* at 17-23.) Thus, the record demonstrates the existence of new evidence, which permitted ALJ Treblin to reopen the prior determination. This evidence "necessarily presented new and material information not presented to the first ALJ." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

Nevertheless, ALJ Treblin erred when he failed to recognize the changed circumstances offered by Plaintiff, *i.e.*, Plaintiff's change in age status, which acted to rebut the presumption of non-disability. In a similar case, *Yang v. Astrue*, No. 1:09cv01495 DLB, 2010 U.S. Dist. LEXIS 105992, at *20 (E.D. Cal. Sept. 22, 2010), the district court stated that "the ALJ must first examine whether changed circumstances exist to prevent a finding of continuing non-disability. If changed circumstances exist, as they do here, the prior RFC is still entitled to res judicata. The ALJ must then determine whether new and material evidence exists to warrant a change in the prior RFC." In *Yang*, however, the district court failed to cite to the plaintiff's changed circumstances. *Id.* On appeal, the Ninth Circuit concluded that this failure "misapplied the res judicata principles set forth in *Chavez*." *Yang v. Comm'r of Soc. Sec.*, 488 F. App'x 203, 204 (9th

Cir. 2012).  Similarly, in the present case, ALJ Treblin failed to recognize the changed circumstances presented by Plaintiff, thereby misapplying the *res judicata* principles set forth in *Chavez*.

Where the instant case differs from *Yang*, however, is that the error in *Yang* was found by the district court, and the Ninth Circuit on appeal, to be harmless.  The district court reasoned:

> A review of the ALJ's decision reveals that he throughly reviewed the medical evidence in finding new severe impairments.  In other words, the decision demonstrates that the ALJ did not strictly apply *Chavez* because he continued on with his review.  Even if he correctly found that Plaintiff's changed circumstances rebutted the presumption of continuing non-disability, the ALJ would have had to go forward and review the medical evidence, as he did despite his error.

*Yang*, 2010 U.S. LEXIS 105992, at *21; *see also Yang*, 488 F. App'x at 204 ("In formulating Yang's residual functional capacity (RFC), however, the ALJ in fact weighed Yang's medical evidence.  Any error was therefore harmless." (citing *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).  Indeed, the ALJ reviewed the plaintiff's medical evidence both from the time period considered during the prior administrative proceedings as well as the new evidence from after the conclusion of the prior proceedings.  *Yang*, 2010 U.S. Dist. LEXIS 105992, at *2-14.

In this case, however, ALJ Treblin's failure to consider Plaintiff's changed circumstances is not harmless because ALJ Treblin failed to give *any* res judicata consideration to the prior administrative finding that Plaintiff is limited to performing light work or the medical evidence underlying that finding.  In fact, ALJ Treblin's analysis expressly ignored the prior finding, and his analysis makes no mention of the medical evidence relevant to that finding.

Plaintiff contends "the ALJ did not contemplate the residual functional capacity assessment made in the prior decision, and then reconsider the residual functional capacity assessment based on the updated evidence of record.  Rather, the ALJ merely considered the [new] evidence *de novo*, and did not give any *res judicata* consideration to the previous RFC assessment." (ECF No. 18 at 5:1-5.)  Plaintiff contends this analysis

1   misapplies the correct legal standard set forth in *Chavez*.  The Court agrees.

2        Although "the *Chavez* presumption does not prohibit a subsequent ALJ from

3   considering new medical information and making an updated RFC determination,"

4   *Alexseyevets v. Colvin*, 524 F. App'x 341, 344 (9th Cir. 2013) (citing *Stubbs-Danielson*,

5   539 F.3d at 1173), an ALJ must, at a minimum, consider the prior RFC and supporting

6   medical records in order to determine whether the RFC should be revised in light of the

7   new medical evidence.  Stated differently, an ALJ cannot make a determination that a

8   plaintiff's medical condition has improved if the ALJ does not even consider the initial

9   findings and underlying medical evidence.  *See id.* ("the ALJ did not err by considering

10  new medical information and *revising* Appellant's RFC based on recent medical

11  evaluations and results." (emphasis added)); *Sam*, 2010 U.S. Dist. LEXIS, at *20

12  (recognizing that when a plaintiff demonstrates changed circumstances to rebut the

13  continuing presumption of nondisability, "[t]he ALJ therefore had to determine if any of

14  the prior ALJ's findings should be adopted.").

15       The Commissioner's reliance on the Ninth Circuit's decision in *Stubbs-Danielson*

16  is misplaced, primarily because the case addressed whether a prior *favorable*

17  determination of disability was entitled to *res judicata* following termination of benefits

18  when the claimant was incarcerated.  539 F.3d at 1172.  The Ninth Circuit's conclusion

19  that no presumption of continuing disability should apply was based on an analysis of the

20  regulatory framework governing the particular facts of that case.  *Id.*  *Stubbs-Danielson*

21  did not, as the Commissioner urges, rely on *Chavez*.  Rather, the Ninth Circuit recognized

22  that the plaintiff in *Stubbs-Danielson* had "cited no authority extending the principles of

23  *Chavez*, which applied preclusive effect to a prior finding of non-disability, to the present

24  context, an attempt to apply that same presumption to a prior finding of disability."  *Id.*

25  at 1173.

26       In conclusion, ALJ's Treblin's failure to recognize the changed circumstances

27  presented by Plaintiff, which successfully rebuts the presumption of continuing non-

28  disability, misapplies the *res judicata* principles set forth in *Chavez* and is legal error.

1   Moreover, the error is not harmless because ALJ Treblin did not analyze whether the new

2   and material evidence was sufficient to revise the prior RFC determination that Plaintiff

3   is limited to performing light work.  Therefore, remand is appropriate for the ALJ to

4   provide the appropriate *res judicata* consideration to the prior finding.  Although the new

5   and material evidence may very well indicate an increased functional capacity, a proper

6   analysis must occur before that determination can be made.[4]

7   **B.**   **Consideration of Treating Physician's Opinion**

8       **1.**   **Parties' Arguments**

9       Plaintiff next argues that ALJ Treblin erred by failing to articulate specific and

10  legitimate reasons for rejecting an opinion of Dr. Chen, one of Plaintiff's treating

11  physicians.  As noted above, Dr. Chen submitted an undated verification of disability

12  form to the Palomar College Disability Resource Center in which she opined that Plaintiff

13  suffers from chronic low back pain and chronic knee pain, and that Plaintiff "can't walk

14  long distances."  (ECF No. 12-3 at 8.)  Plaintiff contends ALJ Treblin's conclusion that

15  Plaintiff is capable of performing medium exertion conflicts with Dr. Chen's opinion

16  because "[t]he ability to engage in prolonged walking is required in light and medium

17  exertional occupations."  (ECF No. 14-1 at 7:16-17.)[5]  Plaintiff then argues  Dr. Chen's

18  opinion supports a finding that he is limited to sedentary exertion which would make him

19  eligible for disability benefits under Grid Rule 201.14 for the period of time in which he

20  was closely approaching advanced age and under Grid Rule 201.06 for the period of time

21  after he had reached advanced age.  (*Id.* at 7:18-23.)  At a minimum, Plaintiff argues Dr.

22

23      [4] As Plaintiff recognizes, "[i]t may very well be that the ALJ may find on remand
24  that [Plaintiff] is limited to medium exertion after properly considering *res judicata*; but
    it may also very well be that the ALJ may find on remand that [Plaintiff is] limited to
25  light exertion after properly considering *res judicata*, which would then result in a finding
    of disability under grid rule 202.06 as of May 23, 2012."  (ECF No. 18:5-11-16.)

26      [5] Social Security Ruling 83-10 provides that "the full range of light work requires
27  standing or walking, off and on, for a total of approximately 6 hours of an 8-hour
    workday," and that "[a] full range of medium work requires standing or walking, off and
28  on, for a total of approximately 6 hours in an 8-hour workday in order to meet the
    requirements of frequent lifting or carrying objects weighing up to 25 pounds."

Chen's opinion supports a finding that he is limited to light work resulting in a disability finding from the time he reached advanced age.  (*Id.* at 8:1-5.)  While recognizing that ALJ Treblin was not bound by Dr. Chen's opinion, Plaintiff contends it was legal error for the ALJ to ignore Dr. Chen's opinion.  Rather, in order to reject Dr. Chen's opinion, ALJ Treblin was required to set forth specific and legitimate reasons for so doing.  Because the ALJ failed to mention the opinion, however, Plaintiff contends the ALJ committed reversible error.

In response, the Commissioner contends: (1) Dr. Chen's opinion is not probative of Plaintiff's limitations for the relevant time period beginning May 3, 2010 because the opinion is undated; and (2) the opinion was made for purposes of obtaining disability access to student support services at Palomar College, and there is no indication that eligibility for such services depended on standards as demanding as those set forth in the Social Security Act.  (ECF No. 15-1 at 4:3-17.)  As a result, the Commissioner contends, "there is no reasonable possibility that Dr. Chen's undated, one-page, check-the-box description of Plaintiff's allegations for obtaining access to student support services [should] be given more weight than Dr. Sabourin's [consulting] orthopedic assessment," (*id.* at 4:19-22), and that any failure to consider Dr. Chen's statement is harmless error. (*Id.* at 5:3-6:2.)

## 2.   Legal Standards

In assessing a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians[6]); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner applies a hierarchy of deference to these

---

[6] A treating physician is one who has provided treatment to a claimant on more than one occasion.  A physician qualifies as a treating source if the claimant sees her with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003).

three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.*  ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)); 20 C.F.R. § 404.1527(c)(2).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984)).  However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997) (citing *Andrews*, 53 F.3d at 1041; *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id.* (citing *Magallanes*, 881 F.2d at 751; *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citing *Magallanes*, 881 F.2d at 751).

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p).  In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a

treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain circumstances. "[W]here [a] treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  However, "if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id.* at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

### 3.    Analysis

For the reasons stated below, the Court finds that ALJ Treblin committed reversible error when he ignored the opinion of Plaintiff's treating physician, Dr. Chen, that Plaintiff is unable to engage in prolonged walking.

Although a treating physician's opinion is not entitled to controlling weight if inconsistent with other substantial evidence in the record, *Orn*, 495 F.3d at 631, "[t]o reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ *must* 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Magallanes*, 881 F.2d at 751 (emphasis added) (quoting *Winans*, 853 F.2d at 647) (citing *Murray*, 722 F.2d at

502).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam) (citing *Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985)); *see also Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . . It is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physician's findings.").

Here, the ALJ did not meet his burden of setting forth specific, legitimate reasons for rejecting Dr. Chen's opinion in favor of Dr. Sabourin's opinion.  Indeed, at best, the ALJ overlooked Dr. Chen's opinion.  At worst, he ignored it.  He failed to set forth a detailed and thorough summary of the conflicting opinions and his interpretation thereof.  The ALJ's failure in this regard amounts to legal error.

In her cross-motion for summary judgment, the Commissioner attempts to provide after-the-fact justifications for the ALJ's failure.  However, "[w]hile the Court can draw reasonable inferences from the ALJ's opinion, *Magallanes*, 881 F.2d at 755, the Court cannot consider the Commissioner's post hoc rationalizations.  The Ninth Circuit has repeatedly emphasized that the 'bedrock principle of administrative law' is that a 'reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.'" *Jones v. Colvin*, No. 1:12-cv-1283- BAM, 2013 U.S. Dist. LEXIS 143425, at *17-18 (E.D. Cal. Sept., 30, 2013) (quoting *Ceguerra*, 933 F.2d at 738) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  The Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  "Although legitimate reasons for the ALJ's reliance on Dr. [Sabourin's] opinions over those of Dr. [Chen] may exist, this Court is only permitted to review the explanation offered by the ALJ in his written opinion." *Langdon v. Astrue*, No. 12-CV-2624 AJB (NLS), 2013 U.S. Dist. LEXIS 147138, at *35 (S.D. Cal. July 9,

2013) (citing *Connett*, 340 F.3d at 874).  "If the ALJ's explanation is inadequate, the reviewing court may not search the record for reasons that support his decision."  *Id.* (citing *Connett*, 340 F.3d at 874); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (failing to offer reasons for disregarding opinions of two of claimant's treating physicians and making contrary findings was error).

In conclusion, ALJ Treblin committed reversible error by failing to set forth specific and legitimate reasons for rejecting Dr. Chen's opinion that Plaintiff is incapable of prolonged walking.  Moreover, because the finding is relevant to the RFC determination and whether Plaintiff should be found disabled under the Grids, remand is appropriate.

### C.    <u>Remand For Further Proceedings Is Appropriate</u>

In social security cases, the Court has discretion to remand a case either for additional evidence and findings, or to award benefits.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans*, 853 F.2d at 647).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  When, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citations omitted).

Here, as indicated above, the ALJ committed legal error failing to provide adequate *res judicata* consideration to the prior administrative finding that Plaintiff is limited to light exertion, and by failing to set forth specific and legitimate reasons for rejecting Dr. Chen's opinion.  Therefore, remand for further proceedings is appropriate.  On remand, the ALJ must determine whether the new and material evidence is sufficient to revise the prior RFC determination that Plaintiff is limited to performing light work.  In addition, the ALJ cannot reject Dr. Chen's opinion without providing "specific and legitimate reasons . . . supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830 (citing *Andrews,* 53 F.3d at 1043).  If the ALJ determines that Dr. Chen's opinion should not be given controlling weight, the ALJ must address the weight to accord her opinion

using all of the factors provided in 20 C.F.R. § 404.1527(c)(2).

## VI. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** Plaintiff's motion for summary judgment be **GRANTED** and Defendant's cross-motion for summary judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than July 28, 2014**, any party may file and serve written objections with the Court and serve a copy on all parties. The documents should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than ten days** after being served with the objections. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: June 27, 2014

DAVID H. BARTICK
United States Magistrate Judge